UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LYNTASHA EASLEY o/b/o P.S.J.,

                Plaintiff,

    v.                                                **DECISION AND ORDER**
                                                              13-CV-923S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.    In this action, Plaintiff Lyntasha Easley challenges an Administrative Law Judge's ("ALJ") determination that her minor daughter, P.S.J. ("PSJ"), is not disabled within the meaning of the Social Security Act ("the Act").

2.    On June 9, 2010, Easley filed an application for Supplemental Security Income ("SSI") on behalf of PSJ, who was then just shy of her twelfth birthday, claiming she had been disabled since August 1, 2008 due to attention deficit hyperactivity disorder ("ADHD"). (R. 163-66, 176.)[1] The application was denied on July 30, 2010. (R. 107, 116-127.) Plaintiff then requested a hearing, which was held before ALJ Bruce R. Mazzarella on December 7, 2011. (R. 67-105.) Easley and PSJ were represented by counsel at the hearing, at which both claimant and her mother testified. (Id.) Counsel requested the reopening of a prior application filed on PSJ's behalf, which had been denied on July 24, 2009 (R. 105, 108-112), and the request was granted (R. 22, 70-71).[2]

---

[1] Citations to the administrative record are designated as "R."

[2] The first application was filed on March 3, 2009. (R. 105.)

3.     The ALJ considered the application *de novo* and, on January 3, 2012, issued a written decision finding that PSJ was not disabled. (R. 22-39.) The Appeals Council denied her request for review on July 22, 2013. (R. 1-5.) This civil action, commenced on September 13, 2013, challenges the Commissioner's final decision.[3]

4.     On January 31, 2014 and April 8, 2014, respectively, Plaintiff and the Commissioner each filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8 and 14.) The motions were fully briefed on May 15, 2014, at which time this Court took the matter under advisement. For the reasons set forth below, the Plaintiff's motion is granted, the Commissioner's motion is denied, and this case will be remanded.

5.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plaintiff v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] The ALJ's January 3, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied the request for review.

6. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. Under the Social Security Act, an individual under the age of 18 is entitled to SSI benefits when he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations set forth a three-step sequential process the ALJ must follow in evaluating SSI claims for minor children. See 20 C.F.R. § 416.924. First, the ALJ must determine whether the child has engaged in substantial gainful activity. If so, the child is ineligible for SSI benefits. 20 C.F.R. § 416.924(b). If the child has not engaged in substantial gainful activity, the second step requires an evaluation of whether the child suffers from

an impairment or combination of impairments that cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c). If the child's impairment is severe, the ALJ then must determine whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1).

8. If the ALJ determines that the child's impairment or combination of impairments does not meet or equal any listing, the ALJ must then assess whether the child's impairment(s) "functionally equal the listings" by considering how the child functions in terms of the following six "domains":

(i) acquiring and using information;
(ii) attending and completing tasks;
(iii) interacting and relating with others;
(iv) moving about and manipulating objects;
(v) caring for oneself; and
(vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). A finding of disability is warranted if a "marked" limitation is found in any two of the listed domains, or an "extreme" limitation in a single domain. 20 C.F.R. § 416.926a(a); see Ramos v. Barnhart, No. 02 Civ. 3127, 2003 U.S. Dist. LEXIS 7463, 2003 WL 21032012, at *8 (S.D.N.Y. May 6, 2003). A "marked" limitation exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

9. Applying the sequential evaluation in the instant case, the ALJ found: (a) PSJ had not engaged in any substantial gainful activity since March 3, 2009 (R. 25); (b)

her borderline intellectual functioning, learning disorder, ADHD, and behavior disorder constitute severe impairments under the Act (id.); (c) PSJ did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (id.); and (d) PSJ did not have an impairment or combination of impairments that functionally equaled the severity of the listings (id. at 26).

10.  Plaintiff maintains the ALJ erred at step three when he failed to evaluate whether PSJ had an Intellectual Disability that met or equaled the standard for an Intellectual Disability under Listing 112.05(D), ignored substantial evidence in the record, failed to fully develop the record, and made findings regarding certain functional domains that are not supported by substantial evidence.

11.  To meet or equal the criteria of Listing 112.05(D), a child must have "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." PSJ's intelligence was evaluated by consultative psychiatric examiner, Renee Baskin, on June 11, 2009 and September 15, 2010. The first evaluation showed a full scale IQ of 64, which is within the range specified in the first part of the 112.05(D) criteria.[4]

Plaintiff maintains that this IQ score, coupled with PSJ's "other mental and physical impairments that impose limitations of functioning"—learning disorder, ADHD, and behavior disorder—compels the conclusion that PSJ met Listing 112.05(D). (Docket No. 8-2 at 13.)

---

[4] The results from the second evaluation show a full scale IQ of 71, with all other measures above 70, as well.

12. The ALJ did not specifically discuss Listing 112.05(D) anywhere in his decision, but generally concluded:

> [PSJ's] impairments are severe within the meaning of the Regulations, but are not severe enough to meet or medically equal any impairments listed in Appendix 1. No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment.
>
> [Further,] a State agency reviewing pediatrician and a reviewing [sic] psychologist, opined that [PSJ's] impairments do not meet, medically equal or functionally equal any listed impairments (Exhibits 8F and 10F).

(R. 26.) Plaintiff contends the ALJ's conclusion is too generalized to be credited because he did not state which Appendix 1 impairments he considered, did not engage in any discussion regarding PSJ's IQ scores, and did not provide an explanation for why her combination of impairments did not meet Listing 12.05(D).

13. Where, as here, a claimant's symptoms as described by medical evidence appear to match those described in the Listing, "the ALJ must explain a finding of ineligibility based on the Listings." Booker v. Heckler, 1984 U.S. Dist. LEXIS 14828, 1984 WL 622, at *3 (S.D.N.Y. 1984). "The . . . determination . . . must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, including any functional limitations that result from the impairment, with the corresponding criteria shown for the listed impairments." Hamedallah v. Astrue, 876 F. Supp. 2d 133, 142 (W.D.N.Y. 2012) (citations omitted). The ALJ must either engage in this comparison, or expressly adopt a medical source statement that discusses the medical evidence and arrives at express conclusions concerning the Listings. Id. (citing Booker, 1984 WL 622, at *3). Neither occurred here.

Although the ALJ acknowledged that PJB's intelligence was evaluated twice, resulting in one full scale IQ falling within the 60 through 70 range, and one falling just above the range, he did not attempt to reconcile these scores, nor did he make a finding as to whether PSJ met the first prong of 112.05(D). To the extent the ALJ did consider this specific Listing, the decision does not provide an analysis of PSJ's impairments that is sufficient to enable this Court to conclude the finding is supported by substantial evidence. On remand, if the ALJ determines Listing 112.05(D) is not satisfied, he should explain why PSJ's IQ score(s), coupled with her learning disorder, ADHD, and behavior disorder, do not meet the criteria for this Listing.

14.  Plaintiff next maintains the ALJ committed a "glaring error" because the decision does not include a discussion of all records that were provided by the Buffalo Public Schools. Because this alleged error relates to the ALJ's findings in regard to the functional domains, it is addressed together with that challenge, below.

15.   In her third argument, Plaintiff asserts the ALJ failed to develop the record because he did make a request for teacher statements, or for evidence relating to PSJ's after school homework program, counseling she received from a social worker, and a 2010 behavior assessment and plan. Therefore, Plaintiff concludes, the ALJ did not obtain the true, entire picture of PSJ's impairments.

16.   "It is the rule in [the Second Circuit] that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record" in light of 'the essentially non-adversarial nature of a benefits proceeding.'" Pratts v. Chater, 93 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Sec'y of Health & Human Svcs., 685 F.2d 751, 755 (2d Cir. 1982)). But it also is well established that "where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation omitted).

As Plaintiff notes, Social Security Ruling 06-03p recognizes that teachers often have close contact with and personal knowledge of minor claimants, and the expertise to make judgments about an individual's impairments, activities, and level of functioning over a period of time. 2006 SSR LEXIS 5, at *8-9, 2006 WL 2329939, at *3. Similarly, social workers are "other sources" whose evidence regarding the severity or effects of an impairment may be considered. 20 C.F.R. § 416.913(d). But, the absence of such evidence does not necessarily render the record incomplete.

Here, it appears the record contains a complete medical history. Having reviewed the evidence from treating, examining, and other sources, including a school psychologist and an educational specialist, the Court finds the record contains sufficient diagnostic, examination, and opinion evidence from which the ALJ could determine whether PSJ was disabled. In sum, there are no obvious gaps in the record and the request for remand on this basis is denied.

17.     Finally, Plaintiff contends that the ALJ's findings of "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others are not based on substantial evidence. Among other things, she maintains the ALJ improperly ignored relevant evidence provided by the Buffalo Public Schools.

18.     As stated in Social Security Ruling 09-3p:

> Because much of a . . . school-age child's learning takes place in a school setting, . . . school records are often a significant source of information about limitations in the domain of "Acquiring and using information." Poor grades or inconsistent academic performance are among the more obvious indicators of a limitation in this domain provided they result from a medically determinable mental or physical impairment(s). Other indications in school records that a mental or physical impairment(s) may be interfering with a child's ability to acquire and use information include, but are not limited to:
>
>> Special education services, such as assignment of a personal aide who helps the child with classroom activities in a regular classroom, remedial or compensatory teaching methods for academic subjects, or placement in a self-contained classroom.
>>
>> Related services to help the child benefit from special education, such as occupational, physical, or speech/language therapy, or psychological and counseling services.
>>
>> Other accommodations made for the child's impairment(s), both inside and outside the classroom, such as front-row seating in the classroom, more time to take tests, having tests read to the student, or after-school tutoring.

2009 SSR LEXIS 3, at *9-10, 2009 WL 396025, at *3. In other words, the ALJ "considers more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in school." 2009 SSR LEXIS 3 at *6, 2009 WL 396025, at *2.

Upon review, the Court is unable to determine that the ALJ's conclusion regarding the domain of acquiring and using information is supported by substantial evidence. As the ALJ noted, there is evidence in the record that, from 2009 to 2011, PSJ's grades improved and speech and occupational therapy services were terminated. However, the ALJ did not acknowledge or discuss comments found in PSJ's 2010-11 IEP regarding her ongoing limitations and accommodations. Among other things, the IEP states that PSJ continues to require a special education program, preferential

9

seating in the classroom, preferential seating and close supervision on the bus, additional time to complete tasks, a structured environment, and testing accommodations including a separate location for test taking, having test directions read to her, extended test taking time, and focusing prompts. (R. 196-202, also R. 347-55 (recommendations for 2011-12 school year).) According to DIBELS assessment, PSJ was reading 71 words per minute as opposed to the expected 120 words for her grade level. (R. 198.)

While an ALJ need not cite every piece of evidence submitted, the reviewing court must be satisfied, on the analysis the ALJ does provide, that the evidence was considered. Brault v. SSA, 683 F.3d 443, 448 (2d Cir. 2012). It may well be that PSJ's functioning has improved to the point that she does not display a "marked" limitation in this domain. However, absent some indication that the ALJ weighed reported improvements in grades and speech with the ongoing need for services and accommodations, the Court cannot conclude his finding of "less than marked" limitations is supported by substantial evidence. On remand, the ALJ should consider PSJ's 2010-11 IEP and, if necessary, obtain testimony concerning PSJ's functioning outside her special education setting. See Gonzalez v. Astrue, 2009 U.S. Dist. LEXIS 111765, 2009 WL 4724716, at *6 (N.D.N.Y. Dec. 2, 2009) (finding of "less than marked" is not supported by substantial evidence when ALJ fails to consider that improvements occurred only in structured special education setting).

19.     In determining a child's limitation in the domain of attending and completing tasks, the ALJ considers the claimant's ability to "focus and maintain [her] attention, and how well [she can] begin, carry through, and finish . . . activities, including

the pace at which [she] perform[s] activities and the ease with which [she] change[s] them." 20 C.F.R. § 416.926a(h).

Here, the ALJ acknowledged that PSJ was diagnosed with and takes medication for ADHD. Relying primarily on Dr. Baskin's examination findings, where it is reported that PSJ's attention and concentration were intact and age-appropriate, the ALJ concluded PSJ had "less than marked" limitations in this domain. (R. 32.) The ALJ made no reference to any school records and, again, the Court cannot determine whether the records were considered. For example, in an IEP for the then-upcoming 2011-2012 school year, it was noted that PSJ continued to require preferential seating in the classroom to allow the teacher to monitor her behavior, a structured environment, frequent monitoring to stay on task and complete assignments, and test taking accommodations including prompts to stay on task. PSJ's reading remained below grade level, and it was noted that "[h]er loud, off-task behavior frequently impairs her ability to attend to reading lessons." (R. 349, 354).

Given the importance of the school setting to an assessment of a child's functioning, the Court is unable to determine, absent some discussion and analysis of school records, that the ALJ's finding is supported by substantial evidence.

20. In the domain of interacting and relating with others, the ALJ will consider:

a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others. This domain includes all aspects of social interaction with individuals and groups at home, at school, and in the community. Important aspects of both interacting and relating are the child's response to persons in authority, compliance with rules, and regard for the possessions of others. In addition, because communication is essential to both interacting and relating, we consider in this domain the speech and language skills children need to speak intelligibly and to understand and use the language of their community.

SSR 09-5p, 2009 SSR LEXIS 5, at *6, 2009 WL 396026, at *2.

Although the ALJ acknowledged Plaintiff's testimony that PSJ has a behavior plan at school, he appears to have drawn conclusions regarding the efficacy of that plan without reference to relevant school records. Again, absent some indication the ALJ considered this evidence in making his assessment, the Court is unable to determine that his finding of "less than marked" limitations in this regard is supported by substantial evidence.

\* \* \* \* \* \* \*

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED;

FURTHER, that the Commissioner's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED;

FURTHER, that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this Decision and Order;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: October 28, 2014
      Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court